## Raff *v.* Philadelphia et al.

*Municipalities—Indebtedness—Increase—Purposes of increase—
Elections—Notices.*

1. The words of the notice of an election on the question of the increase of a municipal indebtedness are to be understood by the electors in their popular, natural and ordinary meaning.

2. Where the municipal authorities, in ordinances and notices of an election to be held upon the question whether municipal indebtedness shall be increased, state as one of the items of increase certain sums to be used for the erection of a public building, and the ballot also so states, the municipality may not thereafter erect such building at a cost greater than that stated in the ordinances and notices of election and on the ballots.

3. Where, in such case, the municipal authorities after the approval of the loan and of the items referred to in the ordinances, notices and statements on the ballots, undertook to erect a convention hall at a cost of $700,000 in excess of the cost stated in the notices for the election, the Supreme Court assumed original jurisdiction of a bill in equity brought by a taxpayer to restrain the city from erecting the hall at a cost greater than that contemplated at the election, and awarded the relief prayed for.

POTTER, MOSCHZISKER and WALLING, JJ., dissent.

Reargued Jan. 3, 1917. Bill in equity, original jurisdiction, Miscellaneous Docket No. 3, No. 188, to enjoin defendants from erecting a convention hall, in case of Harry Raff, a citizen and taxpayer of the City of Philadelphia, in his own behalf and in behalf of such citizens and taxpayers of said city as may join herein, v. City of Philadelphia; Thomas B. Smith, Mayor; George E.

Datesman, Director, Department of Public Works; John M. Walton, City Controller, and William McCoach, City Treasurer of the City of Philadelphia.   Before BROWN, C. J., MESTREZAT, POTTER, STEWART, MOSCHZISKER, FRAZER and WALLING, JJ.   Injunction granted.

Bill in equity for an injunction.   Original jurisdiction.· The opinion of the Supreme Court states the facts.

*J. Washington Logue,* for plaintiff.—The city had no right to enter into a contract for the erection of the convention hall at a cost exceeding the cost advertised in the election notices at which the loan for the raising of the money was authorized: Wakelin et al. v. Philadelphia et al., 21 Pa. D. R. 39; Major v. Aldan Boro., 209 Pa. 247.

*John P. Connelly,* City Solicitor, with him *Ernest Lowengrund,* Assistant City Solicitor, for defendants.— The loan which the electors authorized the city to raise was not for the purpose of completing, but for the purpose of initiating the work.

OPINION BY MR. CHIEF JUSTICE BROWN, January 15, 1917:

In pursuance of an ordinance approved April 21, 1911, the municipal authorities of the City of Philadelphia submitted to its electors the question of an increase of its indebtedness in the sum of $9,750,000, which embraced, inter alia, an item of $1,500,000 "for the erection of a convention hall."   The election was held May 23, 1911, and a majority of the electors voted for the proposed increase.   In the notice of the election, and on the ballots furnished to the voters, the item of $1,500,000 was said to be "for the erection of a convention hall."   On June 19, 1911, the mayor of the city was authorized, by ordinance, to borrow on its faith and credit the sum of $9,750,000, including the $1,500,000 "for the erection of a convention hall."   By an ordinance approved February

18, 1916, he was authorized to enter into a contract or contracts, on behalf of the city, for the erection of a convention hall, the cost not to exceed $1,418,000, the balance of the $1,500,000 which had been appropriated for that purpose. By ordinance approved April 12, 1916, an election was directed to be held May 16, 1916, for the purpose of having the electors pass upon the question of an additional increase of the city's indebtedness in the sum of $47,425,000. The election was in favor of the increase. Among the items embraced in it was one providing for the borrowing of $20,000 "toward the erection of a convention hall, supplementing money borrowed under ordinance approved June 19th, 1911." In the notice of the election, and upon the ballots furnished to the electors, the item of $20,000 was so described. By ordinance approved October 16, 1916, the ordinance of February 18, 1916, authorizing the mayor to enter into a contract for the erection of a convention hall at a cost not to exceed $1,418,000, was amended, by removing the limit of the cost fixed by it and providing that the hall should be paid for from the sums remaining from funds which had been appropriated toward its erection, and from such moneys as might subsequently be appropriated for that purpose. Shortly thereafter an architect was employed, plans were prepared and an estimate of $2,225,000 was submitted as the cost of the proposed hall, and the city authorities were about to advertise for bids and enter into a contract or contracts for its erection at such approximate cost, when this bill—of which we assumed original jurisdiction—was filed by the plaintiff. It avers that the electors by their votes intended to and did limit the entire cost of the construction and erection of the convention hall to the sum of $1,520,000, which they authorized the city authorities to borrow and expend therefor; that the erection of a building at a greater cost than the said sum of $1,520,000 will be unlawful and in excess of the authority conferred by the electors of the city upon the municipal authorities, and that any con-

tract or contracts of the city for the building of a hall, the total cost of which shall be more than the fixed limit, "will be illegal, ultra vires, null and void." The prayer is for an injunction to enjoin the municipal authorities from entering into a contract or contracts, on behalf of the city, for the erection in whole or in part of a convention hall, the total cost of which will exceed the unexpended balance of the amounts authorized by the electors to be borrowed therefor.

When the question of an increase of the indebtedness of a municipality is submitted to its electors in compliance with constitutional and statutory requirements, their votes are simply either "No increase of indebtedness," or "Debt may be increased." The purpose or purposes for the increase are for the municipal authorities when they express their desire for it: Barr & Yocum v. Philadelphia et al., 191 Pa. 438; Major v. Aldan Borough, 209 Pa. 247. But, while this is true, the authorities may not ask the electors to authorize the increase unless they comply with the statutory requirement that public notice of the election to be held on the question of the increase shall "contain a statement of the amount of the last assessed valuation, of the amount of the existing debt, of the amount and percentage of the proposed increase, and of the purposes for which the indebtedness is to be increased." This last clause is to enable the voter to act intelligently upon the question submitted to him, and, when he deposits his ballot, he finds on it, as required by the statute, "the purpose and amount of increase." Though, strictly speaking, the purpose of the increase of a municipality's indebtedness is for the municipal authorities, to whom the electors have delegated the power and authority to act for them, a vote in favor of the increase is an approval by the elector of the purpose for which the indebtedness is to be increased. His disapproval of that purpose would be followed by his vote against the increase. So, after all, unless the electors approve the purpose of the increase of municipal in-

debtedness, it will not be authorized. When it is authorized by them, in approving the purpose for which the authorities have notified them it is needed, common honesty and fair dealing alike require that good faith be kept with them. The complaint of the plaintiff is of bad faith to. him and the other taxpayers of the City of Philadelphia on the part of its authorities in undertaking to enter into a contract for the erection of a convention hall to cost $700,000 more than the electors understood the structure was to cost, when they voted for the increase of the city's indebtedness for that purpose, among others.

The facts in the case are undisputed and the question is a very narrow one. It seems to be undisputed that the City of Philadelphia needs a convention hall. Both branches of council and the mayor have so formally declared, and a majority of the electors have so voted. It was found by the proper authorities of the city that this need could not be filled without the increase of its indebtedness, to be authorized under constitutional and statutory provisions. In compliance with these, an ordinance was passed and approved, providing for the submission to the electors of the question of the increase of the municipal indebtedness for various purposes, among them being an item "for the erection of a convention hall." In the notice of the election it was specifically stated, as required by the statute, that one of the items of the proposed increase was $1,500,000 "for the erection of a convention hall." The notice was not that this sum was to be appropriated toward the erection of a convention hall—in part payment of the cost of it—but for the whole cost of it, and the most zealous advocate of its erection, whether layman or lawyer, ought to understand that no other possible meaning was conveyed to the electors. The words of the notice of the election were to be understood by them in their popular, natural and ordinary meaning: Commonwealth v. Bell, 145 Pa. 374; Keller v. Scranton, 200 Pa. 130. That the city authorities

themselves so regarded the meaning of these words appears from what they subsequently did, after finding that the sum of $1,500,000 was insufficient for the erection of the hall, for when the question of the second increase of indebtedness was submitted to the electors, the notice of the election stated that one of the items of the proposed increase—$20,000—was to be "toward the erection of a convention hall, supplementing money borrowed under ordinance approved June 19th, 1911." The electors were thus distinctly told, when they voted for the second increase, that the $1,500,000 for which they first voted as the amount to be expended for the erection of a convention hall, needed supplementing to the amount of $20,000, and that the cost of the erection of the building would not exceed $1,520,000. After thus being authorized by the electors to expend $1,520,000 for the erection of the hall, the city authorities propose to enter into a contract for its erection at a cost of $700,000 more. This is a palpable breach of faith with the electors. They have a right to insist that what the city authorities so clearly gave them to understand was to be the cost of the hall when they cast their ballots in favor of the increase of the city indebtedness for that purpose, shall not now be ignored by those authorities, for who can say that they would have voted for the increases if they had known the convention hall was to cost hundreds of thousands of dollars more than the sum indicated in the ordinances and in the notices of the elections held in pursuance of them?

It may be that the price of materials and labor has increased to so great an extent that the erection and completion of a structure suitable in size and character as a convention hall are now impracticable and impossible with the sum of $1,520,000, but this does not affect the question under consideration. If the convention hall cannot be erected with the moneys now available for it, under the two elections authorizing the increase of the city's indebtedness, its erection must be deferred until it

can be erected without breach of faith toward those who authorized the increase of indebtedness for that purpose.

As a reason for dismissing this bill, it is urged that the defendants are but following a long continued custom and usage. If this be so, the time is ripe for a departure from it. Malus usus est absolendus.

And now, January 15, 1917, it is ordered, adjudged and decreed that the expenditure of any sum in excess of $1,520,000, already borrowed, or authorized to be borrowed, or so much thereof as remains unexpended, in the erection of a convention hall by the City of Philadelphia, or any contract with the said City of Philadelphia for the erection thereof at such greater cost or expense, will be illegal, and the defendants and each of them are enjoined from entering into a contract or contracts on behalf of the city for the erection in whole or in part of a convention hall, the total cost of which will exceed the unexpended balance or amounts authorized by the electors to be borrowed therefor, the costs in this proceeding to be paid by the City of Philadelphia.

POTTER, MOSCHZISKER and WALLING, JJ., dissent.


DISSENTING OPINION BY POTTER, MOSCHZISKER and WALLING, JJ. :

It seems to us that the majority opinion in this case goes far beyond any of our previous rulings cited therein, and is uncalled for by the facts at bar. No bad faith was intended, and we are convinced no elector was deceived by the wording of the referendum indicating "the purpose and amount of the increase." The ballots read, "$1,500,000 for the erection of a convention hall." The use of the phraseology "for" this or that purpose is quite usual at such times, and heretofore it has never been asserted that it limited the amount ultimately to be expended by the municipal authorities in the complete accomplishment of the particular purpose in view. Of course, when borrowed, the money may not be diverted to any other use than that authorized by the electors;

but, in our opinion, in the making of a public improvement, the city always has the right to add any unappropriated funds which it may have on hand to other moneys obtained by a loan authorized for that purpose. In other words, it is not for the electors to say how much any particular improvement shall cost; that is entirely for their chosen representatives, the city councils. Under the law, all the electors can do is to say whether or not they authorize the borrowing of a certain amount to be set apart for and devoted to the purpose designated on the ballot. How much additional, unappropriated money, if any, shall be used completely to accomplish that purpose, is for councils to decide, not for the people or for this court. For these reasons we would refuse the injunction; therefore we note our dissent.