# McAnulty v. City of Pittsburgh et al., Appellants.

*Municipalities — Increase of debt — Improvements — Possible benefits not to be considered on question of limit—Contracts—Consent of electors—Possession of assets to meet contracts—Later proceedings.*

1. In computing the amount in which the debt of a municipality will be increased by contracts for work to be done, possible benefits to property affected by the improvement cannot be considered, unless they are represented by undisputed liens actually filed against such properties. Hence the mere insertion in an improvement ordinance, of a provision stating that the expense thereof shall be assessed against and collected from the properties especially benefited, will not operate to reduce the amount to be charged as an increase of the city's debt.

2. Where the indebtedness of a municipality has been increased, since the Constitution of 1873 went into effect, in sums aggregating more than two per centum of the assessed value of the taxable property therein, its debt cannot be further increased without the consent of its electors, so long as such outstanding loans exceed that percentage.

3. A city, which cannot lawfully increase its debt without the consent of its electors, can nevertheless legally provide for the payment of a sum in excess of the increase authorized by them, if it has in its treasury, or provides, by a special tax or out of its revenues, a fund or funds which, with reasonable certainty, will be sufficient for payment of the excess within one year; but a statement that at some time in the indefinite future such a provision will be made cannot be accepted in lieu thereof.

4. Contracts are invalid in their entirety if they result in an unlawful increase of the indebtedness of a municipality in any amount whatever.

5. Where the contracts for an improvement are invalid because they unlawfully increase the indebtedness of the municipality, it may, by later proceedings, duly provide for the unlawful excess, and then readvertise and award contracts for the prosecution of the particular improvement.

6. Raff v. Philadelphia, 256 Pa. 312, distinguished.

Argued October 9, 1925. Appeal, No. 5, March T., 1926, by defendants, from decree of C. P. Allegheny Co., Jan. T., 1925, No. 627, for plaintiff, in case of R. M. Mc-

Anulty v. City of Pittsburgh, William A. Magee, Mayor, et al. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Taxpayer's bill to restrain awarding of municipal contracts. Before MACFARLANE, J.

The opinion of the Supreme Court states the case.

Decree for injunction. Defendants appealed.

*Error assigned* was, inter alia, decree, quoting bill of exceptions.

*Thomas M. Benner,* for appellant.—The constitutional provisions and the enabling acts have been considered by the courts in many cases, and the courts have so endeavored to carry out the provisions of the Constitution that they shall be observed and yet not make it impossible for municipalities to function: Schuldice v. Pittsburgh, 251 Pa. 28; Addyston Pipe & Steel Co. v. Corry, 197 Pa. 41; Brooke v. Phila., 162 Pa. 123; Bruce v. Pittsburgh, 166 Pa. 152; Pittston Twp. School Dist. v. School Dist., 275 Pa. 183; Raff v. Phila., 256 Pa. 312; Devlin v. Phila., 206 Pa. 518.

*Charles A. O'Brien,* with him *James A. Wakefield,* for appellee, cited: Troop v. Pittsburgh, 254 Pa. 173; Raff v. Phila., 256 Pa. 312; Mayor v. Boro., 209 Pa. 247.

*Gifford K. Wright,* of *Alter, Wright & Barron,* for Vang Construction Co., intervening appellant.

OPINION BY MR. JUSTICE SIMPSON, November 23, 1925:

Pursuant to an ordinance of the City of Pittsburgh, there was submitted to its electors, inter alia, the question of whether its indebtedness should be increased in the sum of $801,000, "For the city's share, of the cost, damages and expense (including engineering expenses)

of opening......and improving......grading and re-
grading, curbing and recurbing, relaying sidewalks and
laying and relaying sewers and drains, constructing and
reconstructing retaining walls and street foundations
and surfaces (including any and all such improvements
as may be incidentally necessary to intersecting and ad-
jacent streets) [of]......Mount Washington Roadway,
a new highway (in part along existing streets) to extend
from Grandview Avenue at Merrimac Street eastwardly
along the hillside to Manor Street, and thence to a point
near the intersection of Sarah Street and South Seventh
Street, including the construction of a highway bridge,
and undergrade crossings."

The electors consented to the $801,000 increase of
debt, the bonds therefor were issued and sold, and the
city has expended or made contracts for the expenditure
of $746,166.15, covering, however, but a fractional part
of the work to be done. It was admitted, at the trial
below, "that the cost of the entire improvement......
will be at least $1,200,000 or approximately $400,000 in
excess of the amount provided by the bond issue......
and that said excess in amount will be charged against
and borne by the City of Pittsburgh, except so far as it
may be reduced by assessments against properties spe-
cially benefited by the improvement......that the city's
share of the cost, damage, and expense......will be in
excess of $801,000, the amount provided by the bond
issue......[and] that there are no present funds in the
treasury of the city available to pay any of the excess
amounts," the city solicitor also then saying "that the
excess of said amounts will be provided from the gen-
eral city funds." Under these facts, the court below
enjoined the execution of any additional contracts for
the improvement, and the making of any further pay-
ments on those already executed; from this decree the
defendants appeal.

Evidently the indebtedness of the city has been in-
creased, since the present Constitution went into effect, in

sums aggregating more than two per centum of the "assessed value of the taxable property therein," and more than that percentage thereof is still outstanding; hence it cannot further "increase its indebtedness.....without the assent of the electors" at a public election (article IX, section 8, Constitution of Penna.; Pike County v. Rowland, 94 Pa. 238, 248; Pepper v. Phila., 181 Pa. 566; Bell v. Waynesboro Borough, 195 Pa. 299), unless it has in its treasury, or in good faith provides, by a special tax or out of its current revenues, a fund or funds, which will, with reasonable certainty, pay the excess not authorized by the electors: Appeal of the City of Erie, 91 Pa. 398, 403; Wade v. Oakmont Borough, 165 Pa. 479. It is a matter of no moment that the municipal authorities may have thought, when they submitted to the electors the question of increasing the debt for this improvement, that the sum specified would cover the entire expense thereby imposed on the city. When the contracts were made, they knew the $801,000 would be far from sufficient, and they had no right to then provide for an unlawful increase of the debt. The contractors knew this also, and hence have only themselves to blame if they have commenced performance; for the contracts must be declared void in their entirety: Borough of Millerstown v. Frederick, 114 Pa. 435.

Apparently the city officials think they may increase her debt to the extent of the $1,200,000, by the simple device of inserting in the ordinances authorizing the contracts already made, and declaring an intention to insert in each later ordinance, a provision "that the cost, damages and expenses [of the improvement] shall be assessed against and collected from the properties specially benefited," for the purpose of reimbursing the city for the moneys which the contracts require her to pay to the contractors. If the benefits are inadequate to pay the excess over the $801,000, of course it will have to be paid by the city, and, until then, will be a part of her outstanding indebtedness: Addyston Pipe and Steel Co.

v. City of Corry, 197 Pa. 41. In the present instance, no steps have been taken to ascertain if any of the properties have been benefited, and, hence, it is of course problematical whether there will be any recovery from their owners, and if so, in what amounts. For this reason we held in Schuldice v. Pittsburgh, 251 Pa. 28, that, until such benefits are represented by undisputed liens actually filed against the properties benefited, they cannot be considered as an offset in computing the city's debt. No other conclusion is possible, so long as section 5 of the Act of April 20, 1874, P. L. 65, 68, remains in force, for it provides that, "The word 'indebtedness,' used in this act, shall be deemed, held and taken to include all and all manner of debt, as well floating as funded, of the said municipality; and the net amount of such indebtedness shall be ascertained by deducting from the gross amount thereof, the moneys in the treasury, all outstanding solvent debts, and all revenues applicable within one year to the payment of the same." The possible benefits here, if they can properly be called even that, certainly never were either "moneys in the treasury," or "outstanding solvent debts," or "revenues applicable within one year to the payment" of the indebtedness incurred by those contracts.

Though unimportant, legally speaking, it is not without interest that the majority of the court below say that an inspection of the locality of the improvement, makes "plain that the benefits, if any, will be trifling." Appellants, while differing from this broad statement, do not aver that they will be sufficient to pay the excess cost over the $801,000 authorized by the electors, or any material part of it. On the contrary they expressly admit, as above quoted, "that the city's share of the cost, damages and expense......will be in excess of $801,000 ......[and] that there are no present funds in the treasury of the city available to pay any of the excess," and only say that at some time in the indefinite future it will be "provided for from the general city funds."

Of course this statement is likewise of no moment, especially as no action has been taken by the city authorities to make it reasonably certain that the excess above the bond issue will be, or even that it ever can be, met as the payments under the contracts fall due, much less that there will be any "revenue applicable within one year to the payment" thereof.

The question to be decided then resolves itself into this: Can the city effectively substitute for the requirements of article IX, section 8, of the Constitution of the State, a statement, binding upon no one, that an indebtedness which violates this provision, will, at some indefinite time in the future, "be provided for from the general city funds"? If it can, then a municipality need only submit to its electors whether or not they will authorize an increase of indebtedness of $1,000, or any greater or lesser sum, and add the excess, however great, to its indebtedness, without providing any means for its payment; thus making of the constitutional provision a rope of sand, wholly insufficient to rescue the electors from the financial wreck of the municipality, which was the only purpose of its adoption. It follows that, for the reason given in Schuldice v. Pittsburgh, supra,— which is cited and approved in Halpin v. Rochester Borough, 281 Pa. 109,—the above-quoted provision in the ordinances, and the statement of the city solicitor, are alike of no aid to appellants.

The decree entered is too broad, however, possibly unintentionally so, in that the "defendants are enjoined from letting any additional contracts for the improvement." This is a proper disposition of the matter so long as the existing status remains unchanged; but will cease to be so if it is wisely altered. Appellee would have us sustain the decree in its present broad form, because, as he contends, the entire proceeding is void ab initio. To this we cannot assent. The effect of so deciding would be that the $801,000, realized from the sale of the bonds, would have to be held in the treasury, until, by

further action, the electors authorized its expenditure for this or some other improvement. To so hold would result in loss to the city, the appellee and all other taxpayers, and in gain to no one. Raff v. Phila., 256 Pa. 312, upon which he relies for his contention on this point, has no applicability to a case like the present. There the electoral consent was given to the increase of the city's indebtedness in specific amounts, for the purpose of constructing a convention hall, and such a building could readily have been erected for that sum. This was not so as to the particular building for which plans had been drawn and which the city authorities proposed to construct, but the majority of this court held that,—as the electors did not vote an increased indebtedness for the purpose of erecting *that particular* building, but an increased indebtedness for the purpose of constructing *a* building at a cost not exceeding the authorized increase, —to permit the city to expend more than the amounts approved by the electors would be a fraud on them. Here, however, there is little or no leeway as to the character of work to be done, and the contingencies which may affect the total cost may be many and great. The Constitution did not intend to unnecessarily hamper the municipalities of the State in carrying on such improvements as might be deemed necessary, but only to prevent an improvident increase of their debts: Addyston Pipe and Steel Co. v. City of Corry, supra. Consequently, if the city hereafter duly provides a method by which it will be reasonably certain that the excess of probable expense over and above the amount of the loan, can be lawfully met without improperly increasing its indebtedness, no legal reason exists why it may not then readvertise for bids and continue the improvement.

The decree of the court below is affirmed and the appeal is dismissed at the cost of appellants, without prejudice to the city's right to proceed with the improvement, when means have been legally provided for the purpose of meeting the probable excess cost over the amount of the loan authorized by the electors.