## Vitali et al. v. Plains Township School District et al.

*Townships — School building — Additional cost — Election—Debt limit— Injunction.*

Where township electors approve an increase of indebtedness of a school district in a certain sum for the purpose of completing the construction and equipment of a school building then in course of erection, the district has the legal right to expend such sums as shall be necessary to complete the structure, even though in excess of the amount of the authorized increase, provided this can be done, and the necessary funds procured, without unlawfully increasing the indebtedness of the township.

Bill to restrain increase of indebtedness of school district. C. P. Luzerne Co., Oct. T., 1926, No. 13, in Equity.

*John D. Farnham,* for plaintiffs; *John Fine,* for defendants.

McLean, J.—This is a taxpayer's bill to restrain the expenditure of $45,000 by the School District of Plains Township to complete a school building

Vitali et al. *v.* Plains Township School District et al.

already under construction and to build a retaining-wall, steps and sidewalks upon the land appurtenant thereto.

Upon application therefor, a preliminary injunction was granted and the matter is now before us upon motion to continue same after hearing had.

The averments in the bill admitted by the respondent are as follows:

"3. That on Oct. 9, 1922, the then board of directors of said school district entered into a contract with the said Nanticoke Construction Company for the construction of a high school building on West Carey Street, in said school district, for the sum of $149,856, said contract being not for a completed building, but omitting therefrom certain matters which would be essential to its completion; besides the omissions in the general contract, no contracts were awarded or made for heating and ventilating, electrical equipment or plumbing, all of which would be essential to the completion of the building for use as a school building.

"4. That the performance of said contract was proceeded with but was not completed according to the plans and specifications.

"5. That the entire sum of $149,856, which sum was realized by said district from a loan for which bonds were issued in the sum of $100,000 and by appropriation from the tax levy of the fiscal year 1922-23, was expended.

"6. That the then board of directors, desiring to complete said building for use and realizing that the indebtedness of the school district was in excess of 2 per cent. of the assessed valuation, caused an election to be held in said school district for the purpose of obtaining the assent of the electors to an increase of the indebtedness of the school district in the sum of $250,000, and caused a notice of election to be held on May 28, 1924, to be published, a copy of which notice of election, marked Exhibit A, is hereto attached and made a part hereof; wherefrom it appears that at the time of said election the amount of the last assessed valuation of taxable property of the school district was $10,751,739; the amount of the proposed increase in the indebtedness of the district was the sum of $250,000; the amount of the existing indebtedness of the district was $227,000, and the percentage of the proposed increase was 2-3496522 (.023252 plus) per centum of the last assessed valu-

$$\overline{10751739}$$

ation; and the purpose of said increase was stated to be 'paying the cost of and to make the necessary expenditures to complete the erection and construction of and to equip and to furnish the school building now under course of erection and construction, known as the new high school building on West Carey Street, in said school district.'

"7. That by a majority vote of the electors of said district at said election, the increase of indebtedness aforesaid was authorized.

"8. That the said board of school directors, in pursuance of said election, borrowed the sum of $250,000 by sale of school district bonds in that amount, and subsequently entered into contracts for the completion of the said school building, including the structure itself, the heating, ventilating, plumbing and the electrical equipment and equipment and furnishing of said building.

"9. That the said defendant school district has expended that said sum of $250,000 and sums in excess thereof upon the contracts aforesaid and for other expenses incident thereto.

"10. That on July 30, 1926, the defendant board of school directors, by resolution, did signify the desire of said district to increase the indebtedness of the district in the sum of $45,000 for the purpose of completing the basement, completing the installation of the heating plant and the plumbing system of

the new Memorial High School (identical with the school building aforesaid), and constructing a retaining-wall or walls, steps and sidewalks of said school on West Carey Street, Plains, Penna, and did further resolve to increase said indebtedness in said amount of $45,000, and for the purpose of funding the same to issue bonds of said school district."

Neither the necessity for the construction nor the legal capacity of the school district, as affected by the 2 per cent. restriction, to borrow the funds required is attacked.

The contention of the complainants may be briefly stated as follows:

Having obtained the approval of the electors to an increase of the indebtedness of the school district in the sum of $250,000 for the purpose of "paying the cost of, and to make the necessary expenditures to complete the erection and construction of, and to equip and to furnish the school building now under course of erection and construction, known as the new high school building on West Carey Street, in said school district," the school district is not now at liberty to spend the further sum of $45,000 for this purpose without a vote of the electors approving their action, and as authority for this position complainant relies upon the majority opinion of the Supreme Court as delivered by Chief Justice Brown in Raff v. City of Philadelphia, 256 Pa. 312.

The facts in the latter case are these: The City of Philadelphia obtained the approval of the electors to increase its indebtedness, inter alia, in the sum of $1,500,000 "for the erection of a convention hall," and later obtained the approval of the electors to borrow, inter alia, an additional sum of $20,000 to be used "toward the erection of a convention hall, supplementing money borrowed ($1,500,000)." Thereafter the city had plans prepared for the construction of a convention hall and proposed to enter into a contract for its erection at an approximate cost of $2,225,000. Thereupon a bill to restrain the expenditure of any sum in excess of $1,520,000 for the erection of the convention hall was presented to the Supreme Court, which assumed original jurisdiction thereof, and the court there held that such an expenditure was illegal and enjoined the execution of a contract for the erection of a convention hall at a cost to exceed $1,520,000, the amount authorized by the electors to be expended therefor.

From this statement of the case it will be noted that when the approval of the electors was given to the loan, no particular building had been designed or planned, and the approval was given by the electors simply to the project of building a convention hall to cost $1,500,000 (and by subsequent action to cost $1,520,000). But in the case at bar the approval of the electors was given not only to the loan, but that the funds so borrowed should be used for the purpose, as expressed in the election notice, of "paying the cost of, and to make the necessary expenditures to complete the erection and construction of, and to equip and furnish the school building now under course of erection and construction, known as the new high school building on West Carey Street, in said school district." From this it appears that the electors did not give their approval to an abstract project, as in Raff v. City of Philadelphia, supra, to build a school building to cost when completed $250,000, but, on the contrary, approved the construction, completion, the equipping and furnishing of the school building then in course of construction. Then, clearly, if the funds borrowed were insufficient for the purpose intended, namely, to complete the building, the school district would have the right to use any of its unappropriated funds or to borrow (if by so doing the indebtedness were not increased beyond the legal limit of 2 per cent. of the assessed valuation of the taxable

property therein) funds sufficient to complete the building without consent thereto of the electors, and this has been plainly decided in McAnulty v. Pittsburgh, 284 Pa. 304, from which we quote the following:

"Pursuant to an ordinance of the City of Pittsburgh, there was submitted to its electors, *inter alia*, the question of whether its indebtedness should be increased in the sum of $801,000 'for the city's share of the cost . . . of opening . . . and improving . . . and grading . . . a new highway. . . .' The electors consented to the $801,000 increase of debt; the bonds therefor were issued and sold, and the city has expended or made contracts for the expenditure of $746,166.15, covering, however, but a fractional part of the work to be done. It was admitted at the trial below 'that the cost of the entire improvement . . . would be at least $1,200,000, or approximately $400,000 in excess of the amount provided by the bond issue. . . .' Under these facts, the court below enjoined the execution of any additional contracts for the improvement and the making of any further payments on those already executed. From this decree the defendants appeal. . . .

"The decree entered is too broad, however, possibly unintentionally so, in that 'the defendants are enjoined from letting any additional contracts for the improvement.' This is a proper disposition of the matter, so long as the existing status remains unchanged, but will cease to be so if it is wisely altered. Appellee would have us sustain the decree in its present broad form, because, as he contends, the entire proceeding is void *ab initio*. To this we cannot assent. . . . Raff v. City of Philadelphia, 256 Pa. 312, upon which he relies for his contention on this point, has no applicability to a case like the present. There the electoral consent was given to the increase of the city's indebtedness in specific amounts for the purpose of constructing a convention hall, and such a building could readily have been erected for that sum. This was not so as to the particular building for which plans had been drawn and which the city authorities proposed to construct, but the majority of this court held that—as the electors did not vote an increased indebtedness for the purpose of erecting that particular building, but an increased indebtedness for the purpose of constructing a building at a cost not exceeding the authorized increase—to permit the city to expend more than the amounts approved by the electors would be a fraud on them. Here, however, there is little or no leeway as to the character of work to be done, and the contingencies which may affect the total cost may be many and great. The Constitution did not intend to unnecessarily hamper the municipalities of the State in carrying on such improvements as might be deemed necessary, but only to prevent an improvident increase of their debts: Addyson Pipe and Steel Co. v. City of Corry, *supra*. Consequently, if the city hereafter duly provides a method by which it will be reasonably certain that the excess of probable expense over and above the amount of the loan can be lawfully met without improperly increasing its indebtedness, no legal reason exists why it may not then readvertise for bids and continue the improvement.

"The decree of the court below is affirmed and the appeal is dismissed, at the cost of appellants, without prejudice to the city's right to proceed with the improvement, when means have been legally provided for the purpose of meeting the probable excess cost over the amount of the loan authorized by the electors."

Thus, the Supreme Court has said in McAnulty v. Pittsburgh, *supra*, that had the electors given their approval in the Raff case to the increase in indebtedness for the purpose of constructing the particular building which the city proposed to build, instead of a building to cost but $1,520,000, then

the city would have had the legal right to expend any sum required to complete the structure in excess of the amount borrowed, provided the same could be furnished without improperly increasing its indebtedness.

This seems to be decisive of the point involved in the case at bar. The electors gave their consent to the building of the particular school-house then in the course of construction, not to the construction of a school-house which should cost but $250,000, and, consequently, the district has the legal right to expend such sum as is necessary to complete the structure, provided the same can be furnished without improperly increasing its indebtedness; and as it is conceded by complainant that the proposed loan will not illegally increase the indebtedness, we conclude that the district has the legal right to proceed with the proposed construction and to expend the moneys, namely, $45,000, necessary therefor.

Preliminary injunction heretofore granted is dissolved.

From Frank P. Slattery, Wilkes-Barre, Pa.