# Amity Township School District Auditors' Report

*John B. Stevens*, for exceptants.

*Ralph C. Body*, for respondents.

*George Eves*, for auditors.

SHANAMAN, J., April 25, 1936.—The Amity Township School District is of the fourth class. This is an appeal from the auditors' report filed in the Court of Quarter Sessions of Berks County on August 11, 1932, and auditors' supplemental report filed on June 22, 1935, auditing financial transactions of the district for the fiscal year running from July 1931 to July 1932.

The first exception is without merit. The second exception, in view of the supplemental report filed, is without merit.

The remaining exceptions, numbered 3, 4 and 5, comprise one and the same objection and the real point at issue. The whole controversy grows out of appellants' contention that the indebtedness of the district was increased from $6500 to $61,500 by a popular election, and

that the avowed purpose advertised to the citizens was to provide funds, $55,000, to purchase land and erect thereon and equip a consolidated schools building, and that considerably more than that amount was spent.

The narrow point made by appellants is that the advertised amount of the loan was $55,000, and that the total cost of the building was over $55,000; that the school district may not expend upon the improvement a greater amount than that which the board sought popular consent to borrow, as stated by the board in the resolution and notices precedent to the election, and that consequently the directors who afterwards voted to approve payments in excess of $55,000 should be surcharged in the amount of such excess. It is admitted that the project cost more than $55,000.

Appellants rely on Raff v. Philadelphia et al., 256 Pa. 312. Respondents rely on McAnulty v. City of Pittsburgh et al., 284 Pa. 304; Vitali et al. v. Plains Township School Dist. et al., 9 D. & C. 503; and Miller & Sons' Co. v. Mt. Lebanon Twp. (No. 1), 309 Pa. 216. We think the present case is indistinguishable from the Raff case, and is not governed by the McAnulty, Vitali, and Miller cases. In the Raff case, the advertised purpose was to borrow $1,-500,000 "for the erection of a convention hall", subsequently by popular election increased to $1,520,000. In the present case, the advertised purpose was to borrow $55,000 "to provide funds to purchase land and to erect thereon a consolidated schools building, and for the purpose of furnishing the same with suitable and necessary equipment." In both cases the proposition was an abstract one, allowing leeway to the administrators of the fund, who could, if they saw fit, keep within its limits. In both cases the administrators of the fund saw fit to expend more than the amount authorized to be borrowed. In the Raff case, the public officials were enjoined and prevented by a suit in equity from proceeding further. In the present case, appellants would surcharge the public officers who approved of the excessive expenditures.

"They [the electors] have a right to insist that what the city authorities so clearly gave them to understand was to be the cost of the hall when they cast their ballots in favor of the increase of the city indebtedness for that purpose, shall not now be ignored by those authorities. . . . If the convention hall cannot be erected with the moneys now available for it, under the two elections authorizing the increase of the city's indebtedness, its erection must be deferred until it can be erected without breach of faith toward those who authorized the increase of indebtedness for that purpose": Raff v. Phila., 256 Pa. 312, 317.

In the McAnulty case, relied on by respondents, the improvement was described with such precision as to leave little or no leeway to the public officials charged with it. In such case the electors may properly be held to have authorized, not only the borrowing and expenditure of the stated amount, but also the execution of the specific improvement, though its cost might eventually exceed the advertised amount. Similarly, in the Vitali case, a combination of circumstances left the district with a partly erected but uncompleted building. The electors authorized a loan in a specific amount to complete it. It was properly decided that the action of the electors impliedly approved the completion of the building, though at a greater cost than the amount of the loan. The Miller case involved reasonable, unforeseen and unpredictable extras.

But where, as in the Raff case and in the instant case, the voters authorized the borrowing of a named amount for the execution of a new project abstractly described in the notices, as, for instance, "for the purchase of land and the erection and equipment thereon of a school-building", it must be taken that the electors intended to spend only so much, and it was within the power and became the duty of the public officials handling the project to cut the garment to the cloth provided.

Respondents contend that, because of an existing suit in equity to enjoin procedure under the building contracts, appellants cannot now attack the payments under these contracts. The bill in equity was filed on June 2, 1931, and did not seek a preliminary injunction. The directors, who are the same ones sought now to be surcharged for illegal payments under the said contracts, filed an answer, and testimony was taken in June 1931. No further proceedings were had in the equity suit. Two of the three appellants in the present proceeding were plaintiffs in that bill. Irvin C. Shirey, one of the three appellants here, was not a party to that suit in equity. Whatever may have been the legal effect of the failure to prosecute the suit in equity as between the parties, it is by no means certain, and no authority is cited, that Irvin C. Shirey thereby lost his right as a taxpayer to appeal from the audit. Nor was the failure actively to prosecute the suit in equity res judicata, since no final decree on the merits was sought or obtained. Nor is any estoppel raised against Shirey by the manner of conduct of a suit in equity to which he was not a party. There is no allegation of fraud or chicanery, and the facts show nothing on Shirey's part to estop him from taking this appeal.

The auditors' report appealed from shows expenditures for capital outlay during the year July 1931 to July 1932, as follows:

New grounds ................... $ 2,079.92
New buildings ................. 31,456.67
Equipment for new buildings (heat,
    light and plumbing) ........... 12,774.75
Other equipment ............... 312.65
    Total ........................ $46,623.99

Respondents offered their answer filed in the equity suit, which admits that a contract was let to C. S. Painter for the erection of a school building for the price of $41,620; that a contract for the electrical work was let to Weidner & Nuss for $1,500; a contract for plumbing

and drainage to Livingood & Keen for $2,975; a contract for heating and ventilating to W. F. Smith for $9,650; all in May 1931. The said answer admits the additional items of expense of $212.10 for a well (Kohl Bros.), and $900 for an extra half room (C. S. Painter). Respondents' evidence at the audit shows building expenditures for the fiscal year 1931-1932 totaling $46,439.77. That these items of expenditure, together with additional items of like nature in the auditors' report for the preceding year, refer to the building and the contracts in question, sufficiently appears and is not denied.

The audit for the previous year, filed on August 24, 1931, covering the fiscal year 1930-1931, shows:

Capital Outlay:

| | |
|---|---|
| Architect's fee and survey | $   799.00 |
| New buildings | 13,905.54 |
| Total | $14,704.54 |

The total expenditure for the new project, as shown by the two reports, is therefore $61,328.53.

C. S. Rhoads, one of the auditors, testified that the project cost more than $55,000, and that the total figures are spread over the two years, 1931 and 1932.

Exceptants contend that at least $10,000 in excess of the loan was illegally expended. It is difficult to arrive at the exact amount expended. One of the directors, who was also the secretary of the board, testified to the following items of expenditure for the project: general contractor, $42,760, well $210, electrical work $1,500, plumbing $2,975, heating and ventilating $10,000, land $1,610, sewage disposal $1,675, pump and tank $634, extra unit (ventilator) $362; total $61,726. These (Moser's) figures include an unpaid balance of $2,625.35 on the heating and ventilating contract. Deducting this, and adding $1,250 paid to the architect and $145 for a shower, we have a net expenditure of $60,495.65, which is somewhat less than the totals shown in the audits for the two fiscal years 1931 and 1932. This discrepancy may

partly be accounted for by the testimony of Moser that some expenditures were made on the old buildings. For the purposes of this appeal, we shall assume the lower figures of Mr. Moser, which were otherwise uncontradicted and unopposed, to be correct. In fixing liability to surcharge, we are not considering bills shown to be unpaid, to wit, the $2,625.35 balance above mentioned, and the unliquidated remainder of the architect's fee. It must be remembered that surcharge grows out of illegal payments, and not from mere illegal contracts. Neither are we considering the expenditure of $341.18, which appears in the audit for the next year after that from which appeal has been taken. The question of surcharge in this proceeding arises with respect only to the payments covered by the audit for the year 1931-1932, appealed from, and depends upon the legality of those payments. To determine this, it is necessary and proper to consider expenditures upon the building prior thereto, but not those subsequent. Against surcharge it is contended that since the total capital expenditures revealed by the auditors' report are $46,623.99, that is to say, less than $55,000, it is not permissible to consider prior expenditures contained in the auditors' report for the prior year, unappealed from. It is sufficient to state that the exceptions are not taken to any items in the prior report, and that in order to prove an illegal excess of the items of the instant report, over and above the $55,000 authorized, it is of course permissible to show all the payments upon the project, including those which, though not illegal, are, when added to the latter payments, a ground for the illegality of some of the latter as soon as the authorized amount of $55,000 has been exceeded.

We also think it is fair and right in this surcharge proceeding to deduct from the $60,495.65 the amount of a group of extra expenses which the State required the board to incur: Miller & Sons' Co. v. Mt. Lebanon Twp. (No. 1), supra. The amounts of these items appear somewhat discrepant with each other. It is fair to accept the

total given by the witness, to wit, $3,065. Deducting this amount from $60,495.65, we have a remainder of $57,-430.65, which exceeds $55,000 by the amount of $2,430.65. From this may properly be deducted a premium of $50 which the district obtained in the sale of the bonds. This leaves a net excess of $2,380.65.

Director Moser testified without contradiction or dispute that all the payments were made under all the contracts upon the affirmative votes of all the directors. None of the directors questioned any of the payments or voted against any of them, though some of the directors had voted against the award of some of the original contracts. Directors Levengood and Sailer testified that they voted for all payments. Directors Becker and Schmale, called to testify, did not respond. No question is raised as to jurisdiction of the subject matter or parties.

Counsel for respondents, who was also counsel for the same directors in the equity suit, contends that any excess of the expenditures over and above the authorized loan of $55,000 was met out of current revenues. Exceptants contend that the auditors' reports and the evidence show that the current assets were entirely consumed in paying current expenses, and were not available for capital outlay. We are of opinion that such issue does not arise. The question is not whether the directors incurred indebtedness in excess of the constitutional limitation, but whether they expended and actually paid out more for the project than $55,000. We understand the applicable principle to be, under the decision in Raff v. Philadelphia, supra, that public officers, having sought and received popular approval of a loan in a stated amount, for an abstract project, are limited to that amount of expenditure upon such project, irrespective of whether such officers may find that the public treasury is in easy circumstances to expend a greater amount.

We therefore are of opinion, an opinion to which we have come with some regret, since we do not impugn the good faith or even the efficiency of the officers concerned,

but an opinion, nevertheless, which under the law appears unavoidable, that a surcharge must be declared against Henry G. Moser, Rufus D. Levengood, Nathan Sailer, G. Frank Becker and William D. Schmale, in the sum of $2,380.65.

And now, to wit, April 25, 1936, the third, fourth and fifth exceptions to the auditors' report of the Amity Township School District, filed August 11, 1932, are sustained, except as to the specific amount of illegal expenditures alleged therein. Henry G. Moser, Rufus D. Levengood, Nathan Sailer, G. Frank Becker and William D. Schmale are each individually surcharged in the sum of $2,380.65 upon the said audit, and are directed to pay the said amount to the treasurer of the said school district.

### Opinion sur reargument

SHANAMAN, J., June 20, 1936.—On April 25, 1936, this court handed down a decision in which certain persons, Schools Directors of Amity Township School District, were surcharged in the sum of $2,380.65. On May 1, 1936, the directors petitioned for a reargument, which has been had. We find nothing in counsel's latest discussion of Raff v. Philadelphia, 256 Pa. 312, to distinguish that case from the present. The contention of laches we have already overruled.

The contention that the surcharge should be diminished by the sum of $1,299.58, being the total of accrued interest on the bonds, paid to the district by the buyer of them, and of the interest on the proceeds of the bonds, which accrued while the proceeds were on deposit in bank, is not valid. The accrued interest on the bonds at the time of their execution and delivery, which the taker pays to the borrower, is an obligation of the borrower on the bonds, and is paid to the borrower because the borrower, that is to say, the school district, has not received the purchase price of the bonds on the date which they bear and from which interest runs. Neither the borrower nor the lender profits by the settlement, the very purpose of which

is to prevent an unjust enrichment of either. The other item of interest, namely, that received by the school district from its depository upon the borrowed funds during the time they remain in its hands and unexpended, flows into the treasury of the school district only through its having issued the bonds and having obligated itself to pay interest upon them for the same period. Such interest which it is obligated to pay is in fact a larger amount than that received by it as interest on the money deposited in bank. Since, in calculating the surcharge, we did not charge to the amount expended on the building the interest on the bonds, we clearly cannot diminish the cost of the building by the amount of interest received. Respondents cite Miller & Sons' Co. v. Mt. Lebanon Township (No. 1), 309 Pa. 216, 217, wherein the Supreme Court, in calculating the amount realized from the sale of the bonds, included "$7,472.05 from interest earned on the proceeds before the completion of the building." It may be fairly gathered from the opinion, though not expressly stated, that the court did not charge to the cost of the building the cost of financing during construction, namely, the current interest accruing on the bonds during that period. However, it does not appear that the point was raised or argued in the cited case. Since the point has been contested here, we prefer, in the absence of a definite ruling of the appellate courts, to disallow the credit for interest received, for the reasons given.

The remaining contention is that the project necessarily and notoriously involved the destruction or sale of certain small, old one-room schoolhouses which were rendered obsolete and unnecessary by the construction of the new and larger building; that such sales of school properties were effected by the school directors during the years 1931 and 1932; that the proceeds thereof were $4,681.21 (exceptants' figures are $4,227.21); that said amount should be deducted from the total cost of the building; and that consequently the net cost is brought within the amount of $55,000, which the voters authorized

to be borrowed, and within which, as we have held, they thereby confined the cost of the building. This point was not made before and is, in our opinion, well taken.

Where the electors approve an increase of debt in the amount of $55,000 for the creation of a new schoolhouse, which will replace and render obsolete and unnecessary the old ones, they clearly authorize the school directors to borrow $55,000 in new funds not then possessed by the district and to expend such money upon the project. While, as we have ruled, the cost may not exceed $55,000, an analogous principle to that which allows them to expend any additional amount which they receive from the loan by way of premium, permits them, in our opinion, also to expend the proceeds of any school district assets necessarily, purposely, and notoriously destroyed in the erection of the new building. If, for example, the building were to be erected on the site of an existing schoolhouse, and the total contracts exceeded $55,000, but the general contractor allowed the district an agreed amount for the salvage of such portions of the old buildings as he could, when it is torn down, turn to profit, and if the amount of such allowance credited or paid to the school district, brough the total cost within $55,000, the net cost to the school district would not actually exceed that amount.

In the present case, new land was bought for the building. The case is, then, that the new building was not erected upon the site of an old one, but that existing one-room schoolhouses were, with equally certain public intent, rendered obsolete and unnecessary, so that their sale by the school district promptly followed the erection of the new building. We hold that the proceeds of such sales must, with like force of logic, be credited against the cost of the project in determining its net cost in a proceeding whose purpose is to surcharge directors under the principle of the Raff case, supra. In the supposed instance, as well as in the actual case before us, the electors may properly be taken to have intended the reduction to cash

of those assets whose destruction or disuse and sale was necessarily contemplated in the new project. This cash is rightly made out of the new project, which to that extent is self-liquidating. To such an extent as the project actually and necessarily creates in this way cash to pay for itself, a credit must reasonably be allowed against the total contract cost of the building.

The exceptants to the auditors' report argue that a careful study of it will reveal that the purchase price of the old school buildings was not applied to the payment of the project, but was consumed in other current expenses of the district. We do not think that this affects our conclusion. If, in the supposed case of a new building authorized to be erected on the site of an old one, the salvage value of the old one, when torn down, were paid directly to the school district by one independently contracting for its destruction and removal, such district could use the money for any lawful purpose, without altering the fact that the district had necessarily gained such amount by the carrying out of the project, and that such amount necessarily diminished the total cost of the project to the district.

Although exceptants to the auditors' report filed no exceptions to the order of the court surcharging the directors in the amount of $2,380.65, they now ask us to recalculate and increase that amount so as to approximate the larger surcharge for which they have always contended. We have carefully weighed their contentions. Counsel concede that it is difficult to arrive at a certainly correct figure, upon the record. Our reason for adopting the figures of Moser, $60,495.65, in preference to the audit figures, $61,328.53, was that the audit probably contained some items of expenditure upon the old buildings, as stated by the opinion writer, and that Moser's figure was the sum of concrete and traceable items. If, however, we adopt the larger figure, the effect is to increase the surcharge from $2,380.65 to $3,213.53. In such case we point out that, if we are right in allowing a

credit for the proceeds of the old school-houses discontinued and sold, and if these proceeds be taken at the lower figure of $4,227.21, the credit for them still exceeds such a surcharge.

Counsel also contends that the extras do not amount to $3,065, as testified and as found by the court. The items of $128, $900, $362 and $1,675, for additional electric equipment, extra room, additional unit and sewage disposal plant, respectively, all required by the State, foot up to $3,065. The deduction of $1,450 on the general contract, which counsel contends should be deducted as a credit against the extras required by the State, is not shown to be connected with those extras, or to have become feasible because of the State's interposed requirements. We see no reason to modify this item of credit.

Since the gain accruing to the district by the sale of the old buildings exceeds the amount of the surcharge, the allowance of the said credit necessitates a modification of our decree so as to remove the surcharge.

And now, to wit, June 20, 1936, our opinion filed on April 25, 1936, is modified as follows: The exceptions to the auditors' supplemental report of the Amity Township School District, filed on June 21, 1935, are dismissed. The surcharge of $2,380.65, imposed on Henry G. Moser, Rufus D. Levengood, Nathan Sailer, G. Frank Becker and William D. Schmale, by our said opinion and decision filed on April 25, 1936, is dissolved and overruled.