# Major, Appellant, *v.* Aldan Borough.

*Boroughs—Constitutional law—Increase of debt—Election—Art. IX, sec. 8 of the constitution—Act of June 9, 1891, P. L. 252.*

Neither in art. IX, sec. 8 of the constitution nor in the Act of June 9, 1891, P. L. 252, providing how an election upon a proposed increase of municipal indebtedness shall be held, is there any provision that the electors shall pass upon the purpose of the loan. The statutory provision, that the purpose and amount of the increase shall be written or printed on the inside of the ticket, is simply for the information of the voter that he may vote with intelligence upon the question submitted to the electors.

The purpose for which any municipal indebtedness is to be incurred, whether within or above the constitutional limit of two per centum of the assessed valuation, is for the municipal authorities, to whom the electors have delegated the power and authority to speak and act for them ; but, when by an ordinance the municipal authorities provide for an election for the increase of the debt, and the purpose for the increase is distinctly set forth in the ordinance and in the notice of the election, and on his ticket the elector finds a brief statement of it, and the amount of the increase, the borough council cannot, after the increase is authorized by a popular vote, so cast, divert the money from the purpose for which they, in the first instance, declared it was to be used. The mere adoption, however, of a certain method of carrying out the purpose, or making changes in the same,

cannot be regarded as an unlawful diversion, if, in the end, the real purpose of the authorized loan is attained.

Where the purpose of an increase of indebtedness is stated to be the construction of a telford pavement according to certain specifications, the borough authorities will not be restrained from awarding the contract on different specifications, if it appears that the only difference between the two specifications was a change in the bottom construction, which in the opinion of the trial court made no material difference in the solidity of the road.

Argued Feb. 11, 1904. Reargued Feb. 23, 1904. Appeal, No. 304, Jan. T., 1903, by plaintiffs, from decree of C. P. Delaware Co., June J., 1903, No. 313, on bill in equity in case of Henry H. Major and J. Harris Reed v. Aldan Borough et al. Before MITCHELL, C. J., DEAN, FELL, MESTREZAT and THOMPSON, JJ., on argument. Before DEAN, BROWN, MESTREZAT, POTTER and THOMPSON, JJ., on reargument. Affirmed.

Bill in equity for an injunction. Before JOHNSON, P. J. The facts are stated in the opinion of the Supreme Court.

*Error assigned* among others was decree dismissing the bill.

*W. B. Broomall*, with him *J. B. Hannum*, for appellants.— Where municipal authorities are assuming a power not delegated to them by law, then a court of chancery considers them no longer acting under legal authority, but treats them as individuals acting without legal authority : Hill v. Commissioners, 1 Parsons' Equity Cases, 501 ; Barr v. Philadelphia, 191 Pa. 438.

Where the law requires the submission of a question to the vote of the people, it must be submitted to them. They are then the repository of the discretion in the matter and the discretion is removed from council: Yesler v. Seattle, 1 Wash. 308 (25 Pac. Repr. 1014).

*C. Wilfred Conard* and *V. Gilpin Robinson*, with them *Isaac E. Johnson*, for appellees.—The electors were not to determine the purpose of the increase-: Barr v. Philadelphia, 8 Pa. Dist. Rep. 19 ; Bloomsburg Town Election, 4 Pa. Dist. Rep. 671.

On an application to restrain an issue of bonds the court

will not consider the inducements held out to the voters : Simonton on Municipal Bonds, 71.

The case of Yesler v. Seattle City, 1 Wash. 308 (25 Pac. Repr. 1014) is remarkably like the case at bar.

It is totally out of reason to suppose that the legislature intended business matters such as the materials or method of road building, or the plans or structure of a building to be passed upon by the voters: Fritchey v. Huntingdon School Directors, 6 Pa. Dist. Rep. 680 ; Snyder v. Kantner, 190 Pa. 440.

OPINION BY MR. JUSTICE BROWN, May 23, 1904 :

By ordinance of April 20, 1903, the borough of Aldan resolved to increase its indebtedness, and provision was made for submitting the question of the increase to a popular vote, as the same was in excess of two per centum of the assessed valuation of the property within the municipality.   The proposed increase was $17,500 and was for making street improvements. The sum of $15,700 was, as is expressed in the ordinance, to be used as follows :

Grading and telfording Providence Road, from
    Springfield Road to Oak Lane     .     .     $8,000.00
Grading, telfording and surfacing Oak Lane   .     700.00
Grading, telfording and resurfacing Springfield
    Road from Providence Road to P. B. & W.
    R. R.     .     .     .     .     .     .     .     .     5,000.00
Grading, telfording and resurfacing Clifton Ave-
    nue from Springfield Road to Rively Avenue   2,000.00

The balance, $1,800, was to be used in grading, improving and draining five other streets.   At an election held May 26, 1903, the borough electors voted in favor of the proposed increase. Subsequently an ordinance was passed authorizing the loan, and the money was appropriated for the purposes set forth in the ordinance of April 20.   The borough authorities advertised for bids for doing the work on the four streets for which the sum of $15,700 had been appropriated.   The specifications upon which the bids were to be received provided as follows : " Upon the subgrade as prepared, a telford pavement is to be laid, the foundation course must consist of irregular shaped, hard, tough and durable stone, laid by hand so as to break

joints as far as possible ; they must be six inches deep, six to ten inches long, and four to six inches wide, and must be placed on their broadest edges and lengthwise across the roadway. All the irregularities of the upper part of said foundation must be broken off with napping hammers, and the interstices filled up with stone chips, making this layer when complete a firm, substantial and even pavement six inches deep."

With the limited amount of money in their hands the borough authorities were unable to enter into a contract in strict conformity to the specifications, and, upon their modification, a contract was made with Patrick Mahoney. This bill was then filed to prevent him from proceeding with the work on the ground that the council, in making the contract with him, had diverted the money from the purposes for which the municipal authorities had been authorized to borrow it.

By section 8, article IX, of our constitution, no municipality can incur any new debt, or increase its indebtedness to an amount exceeding two per centum upon the assessed valuation of the property within it, without the assent of its electors at a public election, in such manner as shall be provided by law. The Act of June 9, 1891, P. L. 252, provides how an election upon a proposed increase of municipal indebtedness shall be held, and directs that the notice of the election shall contain a statement of the amount of the last assessed valuation, the amount of the existing debt, the amount and percentage of the proposed increase, and the purposes for which the proposed indebtedness is to be increased. But all the elector does is to vote " no increase of debt " or " debt may be increased." Neither in the constitution nor in the act of assembly regulating the election is there any provision that the electors shall pass upon the purpose of the loan. The statutory provision, that the purpose and amount of the increase shall be written or printed on the inside of the ticket, is simply for the information of the voter, that he may vote with intelligence upon the question submitted to the electors. In Barr v. Philadelphia, 191 Pa. 438, in affirming the decree of the court below, we adopted as a correct view of the law upon this subject the following from its opinion: " It is reasonably clear from the language, both of the constitution and of the act of 1891, that it was not the intention that the electors

should determine the purposes to which the moneys are to be applied. The electors are to be given notice of the purposes to which the corporate authorities intend to apply them. If it were the intention of the legislature to have the electors determine the purpose, there would have been a direction not to describe it briefly in their ballots, but clearly, precisely and exactly. The assent of the electors is to be given 'to such increase of indebtedness,' and nowhere is it indicated that they are to assent to or dissent from the purpose or purposes for which the moneys are to be utilized. The ballots are so worded that the electors vote for an increase or no increase of the debt, and the brief description of the purpose is intended for their information, so that they may vote upon this question intelligently." In the present case the purpose for which the money was to be borrowed was clearly set forth in the notice of the election as being the one named in the ordinance directing the election to be held.

The purpose for which any municipal indebtedness is to be incurred, whether within or above the constitutional limit of two per centum of the assessed valuation, is for the municipal authorities to whom the electors have delegated the power and authority to speak and act for them. The very purpose of a town council and chief burgess is that municipal action may be taken by the electors through their representatives as a deliberative body, instead of acting themselves by town meetings, which often would be little more than mobs, when questions of public improvements or relating to the general welfare require consideration and action. It would be utterly impracticable to submit to a popular vote the questions that constantly arise in connection with the control and management of municipal affairs. Not only is the purpose for which public indebtedness is to be contracted, for the councils of a city or a borough, but the method, as well, of carrying it out. If it were otherwise, there might be as many minds as voters as to how the purpose should be carried out. While this is the general rule, it is not to be extended to a case like the present without proper qualifications. When, by an ordinance, the municipal authorities direct, in conformity to the constitutional requirement, the submission to a popular vote of the question of the increase of the indebtedness, the purpose for

increasing it is distinctly set forth, and, in the notice of the election, this purpose again appears, and on his ticket the elector finds a brief statement of it and the amount of the increase, the borough council cannot, after the increase is authorized by a popular vote, so cast, divert the money from the purpose for which they, in the first instance, declared it was to be used. In voting for the increase the electors have a right to assume, and vote accordingly, that their representatives will expend the money for the purpose for which they asked it. To permit them to do otherwise would be to permit them to practice fraud and deception upon their trusting constituents, and when an attempt is made by those in authority to so violate faith with the people, they will be halted by a chancellor. But such diverson of public moneys from the purpose for which they are raised must be substantial. Sound discretion must rest in the authorities in carrying out the purpose, and the mere adoption of a certain method in doing so, or making changes in the same, cannot be regarded as an unlawful diversion, if, in the end, the real purpose of the authorized loan is attained. That it will be attained in the case now before us is manifest from the findings of the learned judge below.

While the court did find, " The pavement provided for in the last named contract is a macadam pavement with the base made of slag and is not a telford pavement as provided for in said ordinances," this finding must be taken in connection with others. The specification calling for a telford pavement, to which we have directed attention and on which the appellants insist the contract should have been made, is : " Upon the subgrade as prepared, a telford pavement is to be laid, the foundation course must consist of irregular shaped, hard, tough and durable stone laid by hand so as to break joints as far as possible ; they must be six inches deep ; six to ten inches long, and four to six inches wide, and must be placed on their broadest edges and lengthwise across the roadway. All the irregularities of the upper part of said foundation must be broken off with napping hammers, and the interstices filled up with stone chips, making this layer when complete a firm, substantial and even pavement six inches deep." That of which they complain, and upon which the contract was awarded, provides : " Upon the subgrade as prepared a pavement is to be laid ; the founda-

tion course must consist of irregular shaped, hard, tough and durable slag of size and quality to be approved by the highway committee, eight inches deep, and repeatedly rolled with a roller weighing not less than fifteen tons, until it forms a foundation at least six inches deep." Each specification continues: " The foundation must be evenly covered to a depth of three and a half inches with Glenn Mills trap rock stone of one and a half inch size, then covered with a light coat of clay, free from lumps, and thoroughly rolled with a roller weighing from three to four tons. Any irregularities or depressions appearing in the roadway must at once be filled with broken stone to bring the same to the proper form of grade and cross section. This layer of stone must be evenly covered with one inch of coarse trap rock screenings, mostly of the three quarter inch size, but containing sufficient dust to make it bind thoroughly, well sprinkled with water and repeatedly rolled with a roller, weighing not less than fifteen tons, until the surface becomes perfectly firm, smooth and hard. The sprinkling must be kept up during the final rolling ; any depressions or ruts that may appear on any part of the pavement from any cause whatever must be filled with three quarter inch stone and thoroughly compacted." From a comparison of these two specifications it is instantly clear that the only difference is a change in the bottom construction. The sixteenth finding, in answer to a request of the appellees, is : " I am of the opinion that a telford construction of slag of the size, shape and laid in the same manner as natural stone would constitute a telford pavement." Another finding is : " The two constructions differ, in that one is stone telford foundation and the other is a slag, answering more nearly to a macadam construction. As far as the end to be reached is concerned I am of the opinion that if a solid foundation is procured under the same circumstances the one is as as good as the other."

From the foregoing it is clear that the borough authorities were not violating good faith to the electors of the borough, or undertaking to do anything for which, under the circumstances, they ought to be enjoined. As courts of equity interfere with the acts of municipal corporations only upon the clearest proof that they are without authority, this bill was properly dismissed.

Decree affirmed at costs of appellants.