Madden, Appellant, *v.* Borough of Mount
Union et al.

Argued April 23, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*W. M. Henderson,* of *Henderson & Henderson,* for appellant.

*Chas. E. Hower,* for appellee.

OPINION BY MR. JUSTICE STERN, May 25, 1936:

The Mount Union Water Company was a corporation supplying water to the public in the Borough of Mount Union. In 1907 it issued and sold $100,000 of bonds secured by mortgage on its water plant and system, and in 1913 issued and sold $30,000 of bonds similarly secured. All of these bonds will mature in 1938. According to their terms, in addition to covering the property then owned by the Mount Union Water Company, these mortgages bound "Also all the lands, leaseholds, extensions, contracts and all appurtenances hereafter acquired,

. . . and all the estate, right, title, interest and property now owned or that may hereafter be acquired and every parcel thereof." A subsequent clause provided: "And it being distinctly understood and agreed that all real estate, machinery, equipment or ·personal property which shall from time to time be acquired for the use on or about the said plant or system and its extensions, pledges and appurtenances by the company, its successors or assigns, with the proceeds of any sale or disposition as aforesaid or otherwise, shall be subject to the lien, effect and operation of this present Indenture."·

In 1918 the Borough of Mount Union purchased for cash the waterworks of the Mount Union Water Company under and subject to these mortgages. Thereafter the borough operated the plant, and subsequently it acquired, by purchase and condemnation proceedings, a watershed, paying for the same out of its general funds, and constructed within the limits of the watershed a large dam or reservoir, the cost of which was paid partly from general funds in the borough treasury and partly by the issuance and sale of bonds of the borough authorized by a vote of the electors.

The borough now desires to refund the $130,000 of bonds secured by the mortgages of 1907 and 1913, and for that purpose an ordinance has been passed by the council of the borough and approved by the burgess which provides that the refunding bonds are to be secured by a mortgage covering the entire water plant and system of the borough as now owned by it, but without any general liability on the part of the borough. Plaintiff, a taxpayer of the borough, filed the present bill in equity asking for an injunction against the issue and sale of the proposed bonds on the ground that the after-acquired property clauses of the original mortgages did not operate to bind the watershed and reservoir which subsequently came into the ownership of the borough, but that, even if the original lien were held to extend to the later-acquired property, the borough does not gain

112

the right from article IX, section 15, of the Constitution to issue refunding bonds which will continue such lien without being considered a debt of the borough within the meaning of article IX, section 8. The court below refused the injunctive relief prayed for and dismissed the bill.

If the Mount Union Water Company had remained the owner of the plant and had itself purchased the watershed and constructed the reservoir, there would be little doubt but that the after-acquired property clause would have reached out to impose the lien of the mortgage upon them: *Phila., Wilmington & Baltimore R. R. Co. v. Woelpper*, 64 Pa. 366; *Colonial Trust Co. v. Harmon Creek Coal Co.*, 287 Pa. 284. The fact, however, that the Borough of Mount Union purchased the plant prior to the acquisition of the watershed and reservoir puts a different legal complexion upon the situation. It is true that in the purchase and operation of the waterworks the status of the borough was that of a private owner: *Western Saving Fund Society of Philadelphia v. City of Philadelphia*, 31 Pa. 175. "Property employed by a municipality in furnishing water to its inhabitants is not used for governmental purposes, and in its ownership and operation the municipality acts in its proprietary character": *Shirk v. Lancaster City*, 313 Pa. 158, 164-5. But the question arises to what extent an after-acquired property clause in a mortgage binds property purchased by a successor or grantee of the mortgagor after acquisition of title to the property originally mortgaged.

Nowhere has this subject been more admirably treated than in the comprehensive opinion of CARDOZO, J., then Chief Judge of the Court of Appeals of New York, in *Guaranty Trust Co. of New York v. New York & Queens County Railway Co.*, 253 N. Y. 190, 199. He there said: "A mortgage of property to be acquired in the future is not a present lien at law. . . . It is, however, equivalent to a covenant to give a lien, and as such, when the property comes into existence, may be specifically enforced

in equity. . . . In the absence of intervening equities forbidding such a use, the property, when acquired, is deemed to feed the mortgage, as if in existence at the beginning. . . . There is need to distinguish, however, between the enforcement of the covenant in respect of property thereafter acquired by the mortgagor itself, and property thereafter acquired by a successor or a purchaser. Property thereafter acquired by the mortgagor itself will be subject to the mortgage, if within the description of the covenant, however alien it may be in quality or function to the property presently subjected to the lien. . . . It is otherwise in respect of purchasers, and even at times successors. To spread the lien of the mortgage to property acquired by these, there must be an independent ground of duty. This must have its origin in a statute or in a covenant of assumption or in the principles of estoppel or accession, or in some other kindred equity."

While there do not seem to be any authorities in our own State, the principles thus expressed represent the view which prevails in other jurisdictions. The question has arisen most frequently in the federal courts in connection with receiverships of railroad companies which have been formed as the result of consolidation or merger, where it becomes necessary to distinguish between the rights of bondholders under mortgages executed by the constituent companies containing after-acquired property clauses and the rights of bondholders under mortgages executed by the consolidated or merging company. In these cases it has been generally held that the after-acquired property clause does not extend the lien of the mortgage to property subsequently acquired by the consolidated corporation; a fortiori the clause would not attach where a corporation has purchased from a mortgagor corporation property under and subject to such a mortgage. The only exceptions are those enumerated in the opinion above quoted, namely, where the matter is controlled by statute, or

where the grantee covenants to assume the mortgage obligation as its own, or where there is an estoppel, or where the principle of accession becomes applicable, or where some special equity exists. The doctrine of "estoppel" applies where an equitable title to "after-acquired" property was obtained by the mortgagor corporation before conveyance to the succeeding or purchasing corporation, in which case it is held that the latter becomes estopped to deny the effect of the after, acquired property clause even though the lien against such property in the ownership of the mortgagor corporation was merely an equitable one. But, as Judge CARDOZO says, in the case cited: "What is meant [by the principle of estoppel] is merely this: That the acceptance of a deed subject to such a mortgage of record does not avail without more to give rise to the estoppel, for the mortgage to that extent is invalid and inoperative. The buyer takes the land cum onere in the sense that he must carry out the covenant as to after-acquired property in so far as it was already specifically enforceable against the seller by force of acquisitions prior to the purchase. He does not take it cum onere in the sense that he must carry out the covenant in respect of acquisitions, not within the principle of accession, made thereafter by himself." So far as the principle of "accession" is concerned, this applies merely to after-acquired property which has become physically or organically attached to the original subject-matter of the mortgage, as by way of fixture, accretion or appurtenance; such property, even though subsequently acquired by the grantee, will be bound by the lien of the mortgage, but this results not so much from the after-acquired property clause as from the application of familiar common law principles.

The reason why it is held that a grantee does not become bound by an after-acquired property clause merely by purchasing land under and subject to a mortgage containing such a clause is that the new property is ac-

quired by the exercise of an independent right of purchase in the grantee and not through any privilege or right obtained through or from the grantor-mortgagor. There is no privity between grantor, mortgagee and grantee in respect to such newly-acquired property. It would be unreasonable to hold that an individual or corporate owner of land under and subject to a mortgage containing an after-acquired property clause cannot thereafter purchase other property, not attached or affixed to that covered by the mortgage, without having it automatically subjected to the original lien.

In *Susquehanna Trust & Safe Deposit Co. v. United Telephone & Telegraph Co.,* 6 Fed. Rep. (2d) 179, 181, a case in the Circuit Court of Appeals for the Third Circuit, it was held that the lien of a mortgage of corporate property containing an after-acquired property clause did not "extend to other property of a new debtor who, as here, has merely assumed the debt of the mortgage containing the after-acquired property clause. . . . A mortgage containing such a clause extends . . . only to property then owned and subsequently acquired by the mortgagor or by another in virtue of the mortgagor's rights." In *Trust Company of America v. City of Rhinelander,* 182 Fed. Rep. 64, 69, it was said: "As the mortgagor could not expressly contract to mortgage the after-acquired property of others, such property can never come within the mortgage by the force of such a contract alone, unaided by the rule of accession, estoppel, or some other equitable consideration." In *Mississippi Valley Trust Co. v. Southern Trust Co.,* 261 Fed. Rep. 765, it was held that, even though the grantee entered into an obligation to assume the debt of the mortgage bonds, this did not subject its after-acquired property to the lien of the original mortgage, since it bought such after-acquired property in its own right as an independent entity and not by virtue of the corporate franchises of the mortgagor corporation. It seems, therefore, fairly well established that the sale of a property covered by a

mortgage containing an after-acquired property clause terminates the operation of the clause. An illuminating discussion of the entire subject is to be found in *13 Minnesota Law Review* 81, under the title, "After-acquired Property Under Conflicting Corporate Mortgage Indentures," and in *40 Harvard Law Review* 222, under the title, "The Allocation of After-Acquired Mortgaged Property Among Rival Claimants." See also *Fletcher, Cyclopedia of the Law of Private Corporations,* volume 7, section 3110.

In the present instance there is no factual element which would operate to take the case out of the general rule. The after-acquired watershed is located about six miles distant from the limits of the Borough of Mount Union, and by no stretch of the imagination can it be considered an appurtenance, accretion or accession to the original waterworks so as to bring it within the common law rule governing physical attachment to the mortgaged property. Neither is there present any element of estoppel or of special equities. According to the record, the only reference in the mortgage to "successors or assigns" of Mount Union Water Company is in regard to real estate, machinery, etc., "acquired for the use on or about the said plant or system . . .," and the after-acquired property here involved obviously does not fall within the category of property acquired for use *"on or about* the said plant."

Concluding, therefore, that the lien of the mortgage securing the bond issues of 1907 and 1913 does not extend to the watershed and reservoir subsequently acquired by the Borough of Mount Union, it is clear that no mortgage can now be created which will fasten a lien upon them unless the bonds secured thereby be considered a part of the general indebtedness of the borough under article IX, section 8, of the Constitution. This follows from the ruling in *Hoffman v. Kline,* 300 Pa. 485, since, according to that authority, article IX, section 15, covers only obligations issued for the *original* construc-

tion or acquisition of waterworks. If, however, the proposed issue of bonds be secured by a mortgage the lien of which is limited to the original plant and system as acquired by the borough, they may be issued as a nondebt lien under the Constitution. The bonds on the plant when it was originally acquired were not a part of the general borough debt, and the refunding bonds must be considered as having in that respect the same legal quality and attribute as pertained to the original issues. The issuance of bonds for the purpose of funding or refunding a debt previously created and existing is not an increase of indebtedness but is merely a continuation thereof: *Schuldice v. City of Pittsburgh*, 251 Pa. 28; *Commonwealth v. Cannon*, 308 Pa. 321. Based on this principle, the Act of June 21, 1935, P. L. 399, authorizes boroughs which have acquired waterworks subject to an existing nondebt lien, or upon which such a lien was created at the time of acquisition, to refund, at or before their maturity, the bonds secured by such lien. The act provides: "Such bonds, so issued, shall not be deemed to be the creation of new obligations or new liens, but be deemed a continuation of the nondebt lien, liens or bonds existing or created at the time of the original acquisition of said waterworks and the appurtenances thereto." To issue refunding bonds and limit the lien of the mortgage securing them to the original waterworks to which, as here decided, the mortgage securing the present bonds aggregating $130,000 is limited, will not increase or change the nature of the obligations of the borough and therefore will not violate the constitutional provision. The issue as now proposed, however, extending the lien to the watershed and reservoir, would be so violative.

The decree of the court below is reversed, with directions to reinstate plaintiff's bill and grant the relief prayed for; costs to be paid by defendant.