Pleasant Hills Borough, Appellant, *v.* Jefferson Township, Appellant.

Argued October 15, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Louis Rosenberg,* for Borough, plaintiff.

*Alvin J. Ludwig,* with him *Irwin I. Tryon* and *Tryon & Ludwig,* for Township, defendant.

*Paul G. Perry, Gustav W. Wilde* and *Burgwin, Ruffin, Perry & Pohl,* filed a brief for interested parties under Rule 46.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, November 17, 1953:

This proceeding in equity presently involves the question of the proper apportionment of assets and liabilities between plaintiff, the Borough of Pleasant Hills, and defendant, the Township of Jefferson. (The latter has since been erected into the Borough of Jefferson but will still be referred to herein as the township.) The borough was created out of the township and incorporated on April 1, 1947.

The original complaint, in addition to a prayer for such apportionment, sought an injunction restraining the township commissioners from constructing water mains or otherwise expending the moneys procured by the township from the sale of a certain issue of bonds. The court below granted the injunction and at the same time appointed an assessor to prepare an accounting of the township's assets and liabilities as an aid in the proper disposition of the case. The township appealed to this court and we reversed the decree enjoining the defendants and remanded the record to the court below for further proceedings in connection with the apportionment prayed for: *Pleasant Hills Borough v. Jefferson Township,* 359 Pa. 509, 59 A. 2d 697. Thereafter the assessor submitted a report containing a list of the assets and liabilities to be adjusted and valuations thereof, and fixing the relative percentages of the assessments as between the borough and the township for the year 1947 as the basis of the adjustment as prescribed by section 703 of the Act of May 4, 1927, P. L. 519. The percentage thus fixed was approximately 47% for the township and 53% for the borough. Exceptions were filed to the report of the assessor by both parties, considerable testimony was taken, and the chancellor filed an adjudication which was subsequently sustained in all respects by the court

in banc. From the final decree which was entered both the borough and the township appeal and now make various contentions in regard to the apportionment of certain assets and liabilities of the township as determined by the court below.

The first of the questions in dispute arises from the fact that shortly before the incorporation of the borough the township had sold a bond issue of $325,-000, the gross proceeds of which, with premium and adjusted interest, amounted to $326,076.56. The purpose of the issue was the purchase of existing water lines, the construction of additional ones, and the procuring and maintaining of a supply of water for the residents of the township. Out of the proceeds which the township had in bank it paid the sum of $10,045.75 for maps, plans and specifications for the construction of the lines, and a few days after the incorporation of the borough, namely, on April 7, 1947, the township commissioners awarded the principal contracts for the work of construction; the contracts were executed on April 24, 1947. The court held that the liability of the township on these bonds as of April 1, 1947 (that being the time of the incorporation of the borough and therefore, under sections 701 and 702 of the 1927 Act, the date governing the apportionment of the assets and liabilities of the township) was not the sum of $325,000, the principal of the bond issue, but only the difference between that amount and the amount of the cash proceeds then in bank, namely $316,030.81.

In our opinion this holding was erroneous. The proceeds of the bond issue were not available to the township for any purpose other than that originally proclaimed by it: *Wilds v. McKeesport City School District,* 336 Pa. 275, 278, 9 A. 2d 338, 339; *Pleasant Hills Borough v. Jefferson Township,* 359 Pa. 509, 515,

59 A. 2d 697, 701. The ordinance itself which provided for the issue contained a provision appropriating all monies derived from the sale of the bonds for the purpose stated therein, and declared that they should not be used for any other purpose.[1] The situation, from a legal standpoint, was just the same as if the money had been trusteed for the payment of the obligations to be incurred under the contracts for the construction of the water mains. Had those contracts actually been entered into but a day before April 1, 1947 there would be no question but that the liability of the township thereunder would have offset the asset of the cash proceeds of the sale of the bonds: cf. *Southmont Borough v. Upper Yoder Township*, 284 Pa. 287, 131 A. 281. But, since the proceeds were appropriated both in fact and in law to the obligations under the contracts to be entered into and which in fact were subsequently executed, it would seem clear that the borough cannot escape its proportionate liability for the payment of the indebtedness on the bonds merely because the contracts had not been actually let prior to April 1, 1947. It was therefore error to deduct the amount of the proceeds in bank from the amount due on the bonds.[2]

---

[1] Section 213 of the Act of June 25, 1941, P. L. 159, provides that "The proceeds of the sale of general obligation bonds shall be used for the purpose or purposes specified in the ordinance authorizing said bonds," subject to an exception not here pertinent.

[2] While the Act of June 25, 1941, P. L. 159, relating to the borrowing of money by certain political subdivisions and the sale of general obligation bonds, does not control the present question, it furnishes at least a persuasive analogy. It provides, section 202, that "The net debt of a municipality shall be the net debt determined as follows: From the gross liabilities of the municipality, which shall be the total amount of the following items: (1) the principal of all bonds authorized or outstanding for whatever pur-

It may not be amiss at this point to state the well established principle of law that, as far as the bondholders are concerned, their rights remain exactly the same as they were at the time the bonds were issued,—in other words, the township and the borough continue fully liable for the payment of the interest and principal of the bonds, which may therefore be recovered from either or both. The debt is due by the people of the territory embraced within the township lines as they existed before the borough was carved out of it, and the bondholders had, and still have the right to look for payment to all the property of both township and borough: *Plunkett's Creek Township v. Crawford,* 27 Pa. 107; *Incorporation of Sharon Hill Borough,* 140 Pa. 250, 21 A. 394; *Township of Upper Darby v. Borough of Lansdowne,* 174 Pa. 203, 34 A. 574; *Sugar Notch Borough,* 192 Pa. 349, 354, 43 A. 985, 986; *Valley Township v. Coatesville Borough,* 51 Pa. Superior Ct. 186, 188.[3] All that concerns us here, however, is the adjustment of the liability as between the township and the borough,—an adjustment which presupposes the ultimate liquidation of the bonds by the township, the borough having the right, if the bondholders enforce payment against it, to call upon the township for reimbursement.

---

pose issued; . . . there may be deducted the following items: (a) The amount of any cash and bonds of the municipality held in any sinking fund for the payment of the principal of any outstanding debt . . . . (e) The amount of surplus cash *not specifically appropriated to any purpose other than the payment of any item of debt."*

[3] Section 705 of the 1927 Act provides that "The court may make all needful orders for the collection and payment, by the township or borough, of the share of the indebtedness apportioned to it, and may order the officers of the township or borough to collect, by special taxation, an amount sufficient to pay the share either in one year or by annual instalments."

When the water mains were installed in pursuance of the contracts executed by the township they were all located within the present boundaries of the township except for a few hundred feet of a main which was extended into the borough. If, as is now held, the borough is liable for its proportionate share of the bonded indebtedness, it should be entitled to a similar apportionment of the value of the water mains purchased by the proceeds of the bond issue. In our opinion these water lines, together with all such lines both in the township and the borough, and all the sewer lines as well (which we understand are located wholly within the borough) are apportionable assets. Property employed by a municipality in furnishing water to its inhabitants is not used for governmental purposes, and in its ownership and operation the municipality acts in its proprietary capacity: *Shirk v. Lancaster City*, 313 Pa. 158, 164, 165, 169 A. 557, 560; *Madden v. Borough of Mt. Union*, 322 Pa. 109, 112, 185 A. 275, 276; *Williams v. Samuel*, 332 Pa. 265, 276, 2 A. 2d 834, 839, 840; *White Oak Borough Authority Appeal*, 372 Pa. 424, 427, 428, 93 A. 2d 437, 439. Exactly the same is true in regard to the sewer properties of a municipality: *Williams v. Samuel*, 332 Pa. 265, 2 A. 2d 834; *Gemmill v. Calder*, 332 Pa. 281, 283, 3 A. 2d 7, 8; *Graham v. Philadelphia*, 334 Pa. 513, 519, 6 A. 2d 78, 80; *Hamilton's Appeal*, 340 Pa. 17, 20, 21, 16 A. 2d 32, 34; *Gilfillan v. Haven*, 161 Pa. Superior Ct. 114, 117, 53 A. 2d 901, 903. Water lines, sewer lines, and a sewage disposal plant have an appraisable commercial or market value; they are not like property which has no productive value, such as the war memorial considered in the case of *Township of Baldwin v. Borough of Overbrook*, 86 Pa. Superior Ct. 164. Indeed in each of the contracts made by the township with water companies for the operation and mainte-

nance of the water distribution system and "for the sale of said water system," the township gave to the company an option, under certain conditions, to buy the system at prices determined according to a formula therein provided. Some testimony was submitted at the hearing in the court below in regard to the replacement value of the sewer lines and the sanitary treatment plant in the borough. As to the latter, the court fixed the apportionable value as $55,000 which was approximately the amount testified to by two of the expert witnesses as being the estimated cost of reconstruction of the plant. On the other hand, there was testimony that the plant was in a deplorable state of disrepair so that another expert witness testified to a value of only about $19,000, an estimate based on the alleged original cost with a deduction for deterioration. A proper valuation would be the estimated reconstruction cost but with the element of depreciation and the physical condition of the plant taken into consideration, and therefore the court was in error in failing to give weight to the evidence that certain parts of the plant require repair: *Borough of Hanover v. Hanover Sewer Co.*, 251 Pa. 95, 98, 96 A. 132, 133. When the present record is remanded it will be incumbent upon the court to take such additional testimony as may be necessary to determine the apportionable valuation as herein indicated of all the water and sewer lines in both borough and township the same as of other physical assets and properties, and to make a proper valuation of the sewage disposal plant. As to the maps, plans and specifications for which the township expended some $10,000 in connection with the construction of the water mains, they must be regarded as a part of that entire project and, if it be determined that they have any present value, an apportionment thereof must be made the same as with respect to the water system itself.

A claim was presented by the Pleasant Hills Fire Company and Relief Association of Allegheny County in the sum of $9,489.98 based on the assertion that the members of the company had, by furnishing material and labor, erected the fire station and community building now situate in the borough. The court allowed this claim in the amount of $8,064.60 and accordingly deducted that amount from the value of the building for apportionment purposes. Whatever the moral obligation may be for the payment of this claim it should have been disallowed because barred by section 704 of the 1927 act which specifically provides as follows: "Three months' notice shall be given, by order of court, to all persons having claims against any of such townships, to present the same on or before the day therein named. All persons failing to present their claims shall be forever debarred from enforcing collection of the same." Proper notice by publication was given by order of court but the claim of the company was not presented until more than two years too late. The words of the section are mandatory and the court could not evade the statutory time limitation therein provided by allowing the claim to be filed nunc pro tunc.

The township contended that its governmental control over the borough was preserved to the first Monday of January of the year 1948 by virtue of the amendment to section 211 of the 1927 Act by the Act of August 6, 1941, P. L. 881, and it claims that it rendered governmental service to the borough until that time, for which it should be compensated. The testimony, however, disclosed that elective officers of the borough, whom we declared in our former opinion in these proceedings (359 Pa. 509, 512, 513, 59 A. 2d 697, 699,) to be de facto officers, actually assumed office on August 15, 1947, and thereafter it was the borough employes,

not those of the township, who performed all the necessary police duties in the borough and kept its streets in repair, for which services they were paid by the borough. The court, therefore, properly apportioned between the borough and the township only the net expenses incurred by the latter for operating the government of the borough from April 1, 1947, to August 15, 1947. Included in those expenses was an item of $2,-000 paid to the township solicitor for professional services and costs advanced in resisting the borough incorporation. The borough contends that it should not be charged with any portion of that fee, but the township was wholly within its legal rights in contesting those proceedings and the payment thus made by it constituted a liability as of the date of the incorporation of the borough and was therefore properly subject to apportionment.

The record is remanded to the court below to take further testimony as herein indicated and to make a final adjudication not inconsistent with this opinion; each party to bear its own costs on this appeal.

