## Commonwealth v. McConnell

Before Trembath, P. J., Sheldon and Decker, Associate Judges.

*John R. Morgan,* District Attorney, for Commonwealth.

*Davis R. Hobbs* and *Roy A. Gardner,* for defendant.

TREMBATH, P. J., February 19, 1965.—Four radar speeding cases were argued together, namely: Commonwealth v. Mayewski, May sessions, 1964, no. 1; Commonwealth v. Hannold, May sessions, 1964, nos. 8 and 9; Commonwealth v. Mowry, September sessions, 1964, no. 27; Commonwealth v. McConnell, number and sessions as above. The McConnell, Mowry and Hannold cases are here on waived hearing, and the Mayewski case is here on appeal.

All four of the cases attack the competency of proof offered, and raise the following questions of law.

1. No competent proof was offered that the radar equipment used was of a type approved by the Secretary.

2. No competent evidence was offered to prove that the radar apparatus used was in fact accurate, or if not, that such apparatus had been adjusted for accuracy.

3. No competent proof was offered that warning signs erected on the highway, indicating that radar was in operation at the time of the offense, were official signs, and had been erected on the highway by the proper authority, or that the intervals at which such signs were to be erected had been officially designated.

4. No competent proof was offered that signs had in fact been erected at proper intervals.

5. No competent proof was offered that the Secretary had appointed as an official station for calibrating and testing radar apparatus the station which made the test.

6. No competent proof was offered that the inspection certificate forms showing test of the radar apparatus actually used and showing speedometer test

were the official inspection forms issued by the secretary.

7. No competent evidence was offered to prove that the speedometer of the motor vehicle used was in fact accurate, or if not, that such speedometer had been adjusted for accuracy.

8. Additionally the Hannold case attacks the jurisdiction of the Clinton Township Justice of the Peace before whom the case was brought.

I. *Was the Evidence Offered Competent to Prove That the Radar Apparatus Used Was of a Type Approved by the Secretary?*

Defendants argue that the Act of April 28, 1961, P. L. 108, sec. 2, provides:—

"No conviction shall be had upon evidence obtained through the use of radar apparatus, unless (i) it is of a type approved by the Secretary," and that evidence offered by the Commonwealth was incompetent to prove compliance with this requirement. The proof offered, Commonwealth's exhibits No. 2 and No. 3, consisted of a certificate dated July 30, 1964, signed by the Deputy Secretary of the Commonwealth under the great seal of the Commonwealth, that attached to the certificate is a true and correct copy of a memorandum dated August 1961 from Secretary of Revenue to Commissioner of the Pennsylvania State Police. The attached memorandum notifies the State Police that the Secretary of Revenue issues approval "of Model S2 electronic speed meter and Model S5 electromatic speed meter manufactured by the Automatic Signal Device, Eastern Industries, Inc., as approved equipment for use by Pennsylvania State Police."

Defendant insists that this proof is not sufficient to comply with Commonwealth v. Perdok, 411 Pa. 301. The Commonwealth's position is that the proof offered is in exact compliance with Perdok.

In Perdok the only evidence in support of the radar equipment used was a certificate of radar speed meter accuracy. Commonwealth's Exhibit No. 2 on its face is a certificate by the Secretary of Revenue of the Commonwealth of Pennsylvania that Models S2 and S5 electromatic speed meters manufactured by Automatic Signal Device Eastern Industries, Inc., are approved equipment under the amended section 1002 Motor Vehicle Code. The certificate then is explicit proof that the Secretary of Revenue approved radar equipment of the type used in this case. The certificate signed by the Secretary of the Commonwealth, Exhibit No. 3, is a certificate in compliance with the Act of March 31, 1823, 8 Sm. L. 144, 28 PS §99. This act directs that such a document "shall be received in evidence . . . in all cases where the original records, documents and papers would be admitted in evidence."

We hold that the original of the document offered as Commonwealth's Exhibit No. 2 would be admissible under the "official statements" exception to the hearsay rule. Professor Wigmore points out in §1631, 3d edition, that the "official statements" exception to the hearsay rule is based, not on necessity, but on expedience. These radar cases are excellent illustrations that what begins as expedience may become necessity. Perdok requires proof that the radar equipment used was of a type approved by the secretary. Whatever measure of proof of this element is required in this court on a waived hearing, is the same proof which must be required by any justice of the peace when hearing before him is not waived. If, then, it be necessary to produce the secretary or one of his deputies before this court, then it would also be necessary to produce the same witness in any justice of the peace or Magistrate court where motor vehicle speed was in issue and its speed was timed by radar. The "official statement" exception  applies to written statements offered

testimonially: Wigmore, §1630. Perdok is authority for the principle that a written official statement when offered testimonially is acceptable proof under the official statements exception, when the statement is made in the course of official duty. The radar statute made it the official duty of the Secretary to approve the type of radar apparatus to be used in Pennsylvania.

II and VII. *Did the Certificate of Radar Speed Meter Accuracy and the Certificates of Speedometer Accuracy Satisfy the Requirements of the Act Permitting the Use of Radar?*

The Radar Act provides, "No conviction shall be had upon evidence obtained through the use of radar apparatus unless (ii) it has been calibrated and tested for accuracy and found accurate or adjusted for accuracy within a period of thirty days prior to the alleged violation."

Section 1002(d), 75 PS §1002(d), makes a similar requirement as to speedometers of the timing officers when speed is tested by a following police car.

Defendant here asserts that the certificate as to the accuracy of radar apparatus shows that the equipment tested was inaccurate and fails to show it was adjusted for accuracy. Defendant also asserts in like vein that the certificate offered as to speedometer accuracy showed that speedometer was inaccurate, and failed to show that it was adjusted for accuracy. The defendant concludes that the equipment used did not comply with the requirements of the section quoted. In Perdok the court pointed out that "By its use of the word 'accurate' the legislature did not require absolute exactness since no machine is capable of such precise measurement. However, it did not intend that the variance between true speed and indicated speed should be of such magnitude as to prejudice the driver": Commonwealth v. Perdok, 411 Pa. 301, 305.

Applying the statistics in the radar test to the facts of Hannold case the radar meter indicated defendant's speed was 65 miles per hour. At this speed the true speed of defendant's automobile according to the certificate of radar speedmeter accuracy was 65.5 miles per hour. Defendant was therefore not harmed by the degree of inaccuracy.

Applying the statistics in the radar test to the Mayewski case the radar meter indicated defendant's speed was 61 miles per hour but officer called 60 miles per hour to officer ahead. At that speed or either of those speeds the true speed of defendant's automobile according to the certificate of radar speedmeter accuracy was 60.4 miles per hour. Defendant was not harmed by that degree of inaccuracy.

Applying the statistics in the radar test to the McConnell case the radar meter indicated defendant's speed was 65 miles per hour. At this speed the true speed of defendant's automobile according to the certificate of radar speedmeter accuracy was 65.2 miles per hour. Defendant was not harmed by that degree of inaccuracy.

The situation is not different so far as the speedometer tests were concerned. In McConnell the speedometer in question was 98 percent accurate which at most would reduce defendant's timed speed to 63.78 miles per hour. In the Mayewski case the speedometer in question was also 98 percent accurate which would at best only reduce defendant's timed speed to 60.78 miles per hour. In the Hannold case the speedometer in question was also 98 percent accurate which would at best only reduce defendant's timed speed to 63.78 miles per hour.

III and IV. *Was Proof necessary and If Necessary Was Competent Proof Offered That the Radar Signs Erected Upon the Highway Were (1) Official Signs and (2) That Those Signs Had Been Erected Thereon*

*by the Proper Authority, or (3) That the Intervals at Which Such Signs Were to be Erected Had Been Officially Designated?*

On this subject the act provides: "No conviction shall be had . . .," etc., "unless (iii) official warning signs have been erected on the highway by the proper authority indicating that radar is in operation."

(3) "The Secretary of Highways shall have the authority to establish, by rule and regulation, the size, color and type of warning sign to be erected on the highways where radar is in use and to designate the intervals at which such warning signs are erected."

Attack is made upon the competency and sufficiency of proof offered to prove compliance with these sections.

It is the duty of the Commonwealth to prove that signs have been erected on the road indicating that radar is in use: Commonwealth v. Brose, 412 Pa. 276, 278. Not only must the Commonwealth prove that signs have been in fact erected warning that radar is in use, but also the proofs must show, in fairness to the defendant, that at least one such sign was erected within ten miles of the spot where his speed was timed by the use of radar, measuring from the radar zone in question back along defendant's route of travel. In the McConnell case there was testimony that a sign was posted on Route 6 two miles east of the point of infraction, and since the defendant was traveling west he passed that sign shortly before he passed through the radar screen. In the Mayewski case, the proof was that such a sign was in place 4.7 miles back along the route he had travelled, and in the Hannold case the similar distance was two (2) miles. The Commonwealth offered into evidence exhibits 4, 5 and 6,* and each of

---

\* Exhibit No. 4 in the McConnell case and Mayewski case is identical with Exhibit No. 5 in the Hannold case. Exhibit No. 5 in the McConnell case and Mayewski case is same as No. 6 in the Hannold case. Exhibit No. 6 in the McConnell case and Mayewski case is same as No. 2 in the Hannold case.

these exhibits was received over defendant's objection. The purpose of these exhibits was to prove that the Secretary of Highways had established by rules and regulations the size, color, and type warning sign to be erected upon the highways where radar was in use, and had by rule established the intervals at which such warning signs were to be erected in compliance with section 1002(d.1) (3).

Before discussing the admissibility of the documents in the form submitted it should be pointed out that while it was the Commonwealth's duty to prove that signs had been erected indicating that radar is in use, and the interval of such placement, it was not necessary to prove that the signs so erected were official signs or that rules and regulations had been adopted by the Secretary of Highways establishing the official size and color of signs, or that he had fixed the intervals at which they must be erected. There is a presumption that signs erected and in place are official signs.

"Thus it will be noted that the establishment of 'thru highways' and the erection of signs thereon is vested solely in the Secretary of Highways of the Commonwealth and that the erection of signs pursuant to his authority constitutes the designation of such 'thru highways'. There is always a presumption that the acts or duties of public officials have been properly performed in accordance with the law and this presumption can be repelled only by clear evidence of illegality: 22 C.J. 130, §69; Commonwealth ex rel. v. Slifer, etc., 25 Pa. 23, 29; 10 R.C.L. 880, §27; Bohan v. Avoca Borough, 154 Pa. 404, 408; Rothwell v. California Borough, 21 Pa. Superior Ct. 234, 239. Not only is there a strong legal presumption that the Ridge Road was properly and lawfully established by the Secretary of Highways as a 'thru highway' but that the 'Stop' and other signs in question were legally erected, which, in the absence of any rebuttal testimony, will prevail and

support a finding by the jury.": Smith v. Kurtz, 34 D. & C. 439, 443; Kowalsky's Express Service v. Haverford Township, 170 Pa. Superior Ct. 229, 233; 164 A.L.R. 212-213.

Nonetheless the Commonwealth's proof that the Secretary of Highways has established official signs, and had designated the intervals at which they must be erected was as follows: Commonwealth's exhibit 4 is a certificate by the Deputy Secretary of the Commonwealth that attached is a true and correct copy of regulations 100.1 to 100.3 of chapter one, Radar Warning Signs, as adopted by the Department of Highways August 31, 1961, and amended May 13, 1963, as the same appear of record and remain on file in this office, and there is attached to the certificate by the said Secretary of the Commonwealth the certificate of the Secretary of the Commonwealth the certificate of the Secretary of Highways that attached is a copy of said regulations as adopted by said Department of Highways August 31, 1961, and amended May 12, 1963. To this latter certificate is appended the approval by Deputy Attorney General.

Commonwealth's Exhibit No. 5 is in the exact form of No. 4 except that the regulation so certified is the original and *un*-amended regulation as adopted August 31, 1961. Each of these exhibits was in the exact form required by the Act of March 31, 1823, 28 PS §99.

The exhibits have attached thereto copies of regulations adopted and amended by the Secretary of Highways which establish the size, color, and type of warning signs and of the intervals at which such signs shall be erected. This is in strict conformity with the authority given by the quoted sections. The regulations, furthermore were first approved by the Attorney General, and then certified by the executive officer (Secretary) and filed in the Department of State as required by the Administrative Agency Law, 71 PS §1710.21.

These documents were therefore lawfully in the office of the Secretary of the Commonwealth and by the provisions of the Act of 1823, P. L. 233, 28 PS §99, "copies of all records, documents and papers, in the offices of the secretary of the Commonwealth . . . when duly certified by the officers of said offices . . . shall be received in evidence . . . in all cases where the original records . . . would be admitted in evidence."

The originals of the certified document would have been admissible under the "official statements" exception to the hearsay rule: Wigmore, 3d Edition, §1631; Commonwealth v. Perdok, 411 Pa. 301, 306; Fauceglia v. Harry, 409 Pa. 155, 160.

Defendants have argued that the Commonwealth proved the erection of only one sign, and that an "interval" cannot be proven until the position of at least two signs are established. We hold that the purpose of the act was to warn the traveling public that radar is in use. Each defendant passed one such sign within ten miles of the spot where his speed was timed by radar, and hence so far as he was concerned the full purpose of the act was served. Where the next sign was placed along defendant's proposed route could not possibly be relevant.

V. and VI. *Was It Necessary for the Commonwealth to Prove That the Secretary Had Appointed As An Official Testing Station the Station Which Tested the Radar Apparatus Used, Or That the Certificate Used By the Testing Station Was the Official Certificate Form, Or That the Certificate of Speedometer Accuracy Was An Official Form?*

The said act authorizing the use of radar further provided:—

(2) "The secretary shall have authority to appoint official stations for calibrating and testing radar apparatus . . . and shall issue official inspection forms."

Defendant asserts that it was incumbent upon the Commonwealth under subsection (d) (2) to prove (1) that the secretary has appointed as an official station the agency which makes the test, and (2) that the secretary has issued to such station official inspection certificate forms. As to the first proposition, it is immaterial whether the issuing testing station was operating de jure or de facto, because in either event the acts of the testing station are good so far as they affect defendant, and the public: Commonwealth ex rel. v. Snyder, 294 Pa. 555, 559; PleasantHills Borough v. Jefferson Township, 359 Pa. 509, 513; 43 Am. Jur. Public Officers §494.

The second question, attacking the exhibited certificate of the testing station because it was not proven as the official form prescribed by the secretary, raises another collateral issue. If the form of the certificate is not in fact the form officially approved, its use is not proscribed by the statute. In form the exhibit is a certificate of a public officer expressing the degree of accuracy of the machines tested by the officer when he examined the instruments in the line of his duty. Wigmore points out in §1633, 3d Edition, when discussing the "official statements" exception to the hearsay rule: "It is clear that no express statute or regulation is needed for creating the authority or duty" for a public officer to make a statement. "The existence of the duty, and not the source of its creation, is the sanctioning circumstance," and in section 1674 he further points out, "It follows, then, on the general principle (Wigmore 1633) that the certificate is admissible only for those facts covered by the terms of the authority, *and, conversely, that it is admissible to prove all the facts thus included.*"

It is clear that the testing agency has the duty to test, and it is its corollary duty to make report of its test. The certificate offered was therefore properly

received in evidence whether or not it was the official form prescribed by the secretary.

It should also be pointed out that the appointment of a public official, in this case the official testing station, is not required to be shown in many legal causes because it is irrelevant to the issue in trial, but even where it is required to be shown it can be shown without written proof by merely showing the course of action of this person as a public officer: Wigmore, §2535. "The rule is well settled that until the contrary appears, due appointment to office may be presumed from the fact that one has acted in an official capacity. This presumption of authority is not confined to official appointees; it has been extended to persons who have been appointed . . . to act in quasi-public or quasi-official capacities . . . .": 20 Am. Jur. Evidence §176. We hold that a radar speed meter testing station is such a quasi official. What we have said with respect to the sufficiency of the form of the radar speed meter test certificate applies with equal force to the form of certificate for the speedometer test.

Defendant, Henry McConnell denied that he speeded at the time and place in question and testified that his speed whenever he looked at his speedometer, and he looked frequently, did not exceed 53 miles per hour.

And now, February 19, 1965, we find defendant guilty, and impose a fine of $10 and costs.